

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

---

*Rod J. Rosenstein*
*United States Attorney*

*Bonnie S. Greenberg*
*Assistant United States Attorney*

*36 South Charles Street*
*Fourth Floor*
*Baltimore, Maryland 21201*

*DIRECT: 410-209-4890*
*MAIN: 410-209-4800*
*FAX: 410-962-0716*
*TTY/TDD: 410-962-4462*
*Bonnie.Greenberg@usdoj.gov*

December 29, 2010

Gary W. Christopher, Esquire
First Assistant Federal Public Defender
Tower II, Suite 1100
100 South Charles Street
Baltimore, Maryland 21201

    Re:    United States v. Rafael Luis Mieles
             <u>Criminal No. WDQ 10-0345</u>

Dear Mr. Christopher:

      This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by January 7, 2011, it will be deemed withdrawn. The terms of the agreement are as follows:

<u>Offense of Conviction</u>

      1.    The Defendant agrees to plead guilty pursuant to Fed. R. Crim. P.11(c)(1)(C) to Count One of the Indictment now pending against him charging him with distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.



2. The elements of the offense to which the Defendant has agreed to plead guilty, and which the Government would prove if the case went to trial, are as follows:

    a. The Defendant knowingly distributed a visual depiction;

    b. The Defendant used a means or facility of interstate or foreign commerce, specifically a computer; and

    c. The Defendant knew the visual depictions involved the use of a minor engaged in sexually explicit conduct.

### Penalties

3. a. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: imprisonment for not less than five (5) years and not more than twenty (20) years, followed by a term of supervised release of not more than life and a fine of $250,000. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

    b. The defendant understands and agrees that as a consequence of his conviction for the crimes to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

2

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

    a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

    e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he/she is not a citizen of the United States, pleading guilty may have consequences with respect to his/her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his/her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he/she wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt and to the following applicable sentencing guidelines factors:

    A.     <u>Count One - Distribution of Child Pornography</u>

        1. The base offense level is twenty-two (22) pursuant to U.S.S.G. § 2G2.2(a)(2).

        2. Pursuant to U.S.S.G. § 2G2.2(b)(2), there is a two (2) level increase because the depictions involved prepubescent minors or minors under the age of twelve (12).

        3. Pursuant to U.S.S.G. § 2G2.2(b)(3)(F), there is a two (2) level increase because the offense involved distribution.

        4. Pursuant to U.S.S.G. §2G2.2(b)(6), there is a two (2) level increase because the distribution involved the use of a computer.

4

5. Pursuant to U.S.S.G. §2G2.2(b)(7)(C), there is a four (4) level increase because the offense involved at least 300, but not more than 600, images.

**(SUBTOTAL = 32)**

B. The Guideline calculation must also take into consideration the fact that the Defendant used a facility in interstate commerce to entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). Pursuant to U.S.S.G § 2G1.3(a)(3) and (b)(3), the offense level for this is **thirty (30)**.

C. Pursuant to U.S.S.G. §§ 1B1.2 and 3D1.4, the above-referenced groups do not group and therefore the highest offense level is increased by two (2) offense levels.

**(SUBTOTAL= 34)**

This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon your client's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of your client's acceptance of personal responsibility for his conduct. This Office may oppose *any* adjustment for acceptance of responsibility if your client (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office or the United States Probation Officer; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

**Thus, the final anticipated base offense level is 31.**

7. This Office and the Defendant agree that, with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in Chapters 2, 3, 4 or 5 of the United States Sentencing Guidelines will be raised or are in dispute.

8. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

### Obligations of the United States Attorney's Office

9. The parties stipulate and agree that, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), a sentence of **120 months'** imprisonment in the custody of the Bureau of

Prisons, and lifetime supervised release, is the appropriate disposition of this case. This agreement does not affect the Court's discretion to impose any lawful fine. In the event that the Court rejects this plea agreement, *either* party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea agreement pursuant to the provisions of Federal Rule of Criminal Procedure 11(d)(2)(A).

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct. The government agrees to dismiss the remaining counts of the Indictment.

## Waiver of Appeal

11. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds **120 months'** imprisonment; (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is below **120 months'** imprisonment.

c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

12. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

13. The Defendant expressly understands that the Court is not a party to this agreement. The Defendant understands that the Court is under no obligation to accept this plea offer made pursuant to Rule 11(c)(1)(C). The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Forfeiture

14. The defendant agrees to forfeit all right, title and interest in the property seized by law enforcement authorities on March 2, 2010 and the property listed in the forfeiture count of the indictment. He further agrees to take whatever steps are necessary to pass clear title to those properties to the United States.

## Entire Agreement

15. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Bonnie S. Greenberg
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

01·07·2011
Date

Rafael Luis Mieles

I am Mr. Mieles' attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

1-7-2011
Date

Gary W. Christopher, Esquire

8

## **EXHIBIT A**
## **STIPULATED FACTS**

The undersigned parties hereby stipulate and agree that if this case had proceeded to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.

Rafael Luis Mieles, age 25, is a resident of Baltimore, Maryland.

On February 17, 2010, while working in an undercover capacity, Baltimore County Police Detective Kevin Smith answered an online Craig's List ad entitled "Family Fun – 27 (Baltimore, MD)." The body of the ad included the following "Looking for some good family fun with incestuous father son sexually active couple. hit me up with pics for trade. lets do this." Detective Smith responded to the ad via email stating he was a parent of a 12-year old autistic boy and was interested in the ad.

On February 18, 2010, Mr. Mieles, the individual that posted the ad on Craig's List, emailed Detective Smith, stating that he was very interested in communicating with him. Mr. Mieles sent Detective Smith a picture of himself and a picture of his erect penis. The pictures were sent from his e-mail address, ashreisrael@hotmail.com, and the name "Rafael Mieles" appeared in the header of the emails.

Later on February 18, 2010, Mr. Mieles contacted Detective Smith via Yahoo Messenger and asked Detective Smith if he had "pedo pics to trade." Mr. Mieles also told Detective Smith that he wanted to perform oral sex on Detective Smith's 12-year old son and wanted the 12-year old boy to perform oral sex on him. Mr. Mieles also sent two images and one video via Yahoo Messenger to Detective Smith. At least one of the images and the video constitute child pornography as they contained visual depictions of actual minors engaged in sexually explicit conduct. One of the images, the title of which is txgfg.jpg, depicts a naked prepubescent male and a naked adult male with their right hands on their erect penises and their left hand cupping their testicles. The video, the title of which is !3boys.mpg, depicts three minor boys engaged in oral and anal sex with each other.

On March 1, 2010, Mr. Mieles again contacted Detective Smith via the Internet using Yahoo Messenger. During their Internet conversation, Mr. Mieles sent Detective Smith five videos that contain visual depictions of actual minors engaged in sexually explicit conduct, and constitute child pornography. By way of example, three of the videos distributed by Mr. Mieles are described as follows:

    a.    **8yo-boy-sucks-cock.mpg** - This video depicts a naked prepubescent male performing oral sex on an adult male.

9

    b.    **10yo Danny humps his brother.mpg** – This video depicts a naked prepubescent male attempting to have anal intercourse with another male.

    c.    **Copy of (Pthc) Boy 8Yo Sucked By His dad 2 2 14-46-06.mpg** –This video depicts an individual performing oral sex on a naked prepubescent male lying on a bed.

Additionally on March 1, 2010, while communicating with Detective Smith via the Internet through Yahoo Messenger, Mr. Mieles continued to discuss, in explicit detail, his desire to perform various sexual acts with Detective Smith's 12-year old son. When Mr. Mieles was communicating via the Internet with Detective Smith, Detective Smith informed Mr. Mieles that his 12-year old son was sitting at the computer with him. Mr. Mieles proceeded to turn on his webcam and began to masturbate while he thought the 12-year old boy was watching. Mr. Mieles agreed to meet Detective Smith and the 12-year old boy at a hotel in Baltimore County for sexual purposes.

On March 2, 2010, Mr. Mieles again contacted Detective Smith via the Internet through Yahoo Messenger and confirmed that he would meet Detective Smith and the 12-year old boy at the hotel. Mr. Mieles asked Detective Smith to send a taxicab to his residence located at 7006 Surrey Drive, Baltimore, Maryland. Surveillance by law enforcement at 7006 Surrey Drive, Baltimore, Maryland revealed Mr. Mieles leaving his residence and getting into the cab. When Mr. Mieles arrived at the predetermined location he was placed under arrest by members of the Baltimore County Police Department Crimes Against Children Unit. A search incident to arrest revealed Mr. Mieles was in possession of a black bag that contained a Samsung T-Mobile cell phone, a Toshiba laptop, serial number: 39097214W, a stack of discs, keys and two toy cars, which cars he had promised to bring for the 12-year old boy.

Mr. Mieles was transported to the Baltimore County Police Department, Crimes Against Children office where he was provided his *Miranda* rights, and interviewed. During the interview, Mr. Mieles admitted that he posted an ad on Craig's List looking for a father and son for a threesome and age did not matter. Mr. Mieles admitted to communicating with an individual online that was going to bring his 12-year old child to the hotel so that Mr. Mieles could have sex with the child. Mr. Mieles further admitted to sending the individual images and videos of child pornography that he stated he received from at least two other individuals via Yahoo Messenger. Mr. Mieles stated that there was child pornography on the laptop that he brought with him to the hotel and that he had another computer at his residence that was "broken." Mr. Mieles admitted to communicating with the individual and the 12-year old child from his residence located at 7006 Surrey Drive, Top Floor, Baltimore, Maryland 21215. Mr. Mieles also stated that he intended to have sex with the individual he was communicating with via the Internet as well as the individual's 12-year old autistic son. Mr.

Mieles stated he purchased the two toy cars at the Dollar Store just prior to meeting with Detective Smith and the 12-year old boy at the hotel.

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case.

_____
Rafael Luis Mieles